### WITHERSPOON et al. v. CORY et al. (No. 6917.)

(Court of Civil Appeals of Texas. San Antonio. March 21, 1923.)

**I. Payment ⬥89(5)—Evidence held sufficient to show payment of money under misapprehension.**

In an action for money paid as accommodation, evidence *held* sufficient to sustain a finding that onions belonging to defendants were shipped with those belonging to plaintiffs under an arrangement with the buyer, and that the plaintiffs paid defendants for their onions, under a misapprehension that the entire shipment had been paid for by the buyer, under an existing arrangement.

**2. Payment ⬥89(4)—Petition for money paid to defendants as accommodation held sufficient as against general demurrer.**

A petition for money paid as accommodation by one who permitted defendants to ship onions with a shipment of his own, under an arrangement with the buyer that he would, on receipt of advice that the shipment had been made, deposit the purchase price to the credit of the seller, and who, under a misapprehension that the buyer had done so, paid defendants for their onions, making no profit thereon, *held* sufficient as against a general demurrer.

**3. Appeal and error ⬥1042(4)—Failure to strike allegations in petition not submitted held not prejudicial.**

Where attempted arbitration was not submitted to the jury, the allegations thereof in a petition for money paid as an accommodation in no manner influenced the judgment rendered, and whether such allegations should have been stricken became immaterial.

**4. Appeal and error ⬥1052(5)—Admission of oral testimony without objection destroys force of objections to written evidence on same subject.**

Where oral testimony as to an attempt at arbitration in an action for money paid as accommodation was not objected to, its admission destroyed the force and effect of objections to written evidence relative thereto, even though proper exceptions had been reserved.

**5. Exceptions, bill of ⬥26—Every bill must be perfect in itself.**

Every bill of exception must be perfect in itself, and can gain no assistance from reasons set forth in another, even though they were clear and to the point, and imperfections in reserving exceptions are not cured because of the claim that it was understood by the court that objections were made to all the evidence bearing upon a certain subject.

Appeal from District Court, Lasalle County; Covey C. Thomas, Judge.

Action by E. N. Cory and others against C. L. Witherspoon and another, a partnership. From a judgment for plaintiffs, defendants appeal. Affirmed.

Thos. H. Ward, of Laredo, for appellants.
Arnold & Cozby, of San Antonio, for appellees.

FLY, C. J. This is an action to recover $1,125, instituted by E. N. Cory, H. L. McWilliams, O. S. McWilliams, and Thomas G. McWilliams against C. L. Witherspoon and Joseph Nagy, a partnership, said sum being alleged to have been expended as an accommodation to appellants by appellees. The transaction out of which the payment of the money arose is set out in elaborate detail in

the petition, the gist of which is that appellees had an arrangement with one J. Armengol of Laredo, by which they would sell onions to him and he would, upon being notified by telephone that the onions were loaded on cars at Derby Tex., pay for the onions by sending a check to the Dilley State Bank to be deposited to the credit of appellees, at the price of $1.25 per crate. This arrangement had been operating satisfactorily during 1919 and part of 1920, and it was the understanding that onions belonging to other parties might be loaded to fill out cars. Under this last agreement appellants were permitted to place 900 bushels of onions into cars, about May 20, 1920, and, as was customary, notice was given to Armengol that four cars of onions had been loaded at Derby, and appellees received a copy of a letter purporting to have been written by Armengol to the Dilley State Bank, informing the bank that a check for. $2,710 was inclosed to pay for the four cars of onions. This being the customary way of dealing with Armengol, and believing that the check had been sent and the money placed to their credit by the bank, appellees paid appellants $1,125 in payment for their onions, but afterwards, ascertaining that no check or money had been deposited for them by Armengol, they demanded repayment of the $1,125, which was refused. Appellants claimed that they sold their onions to appellees and had no business transactions, directly or indirectly, with Armengol. The cause was submitted to a jury on the single issue: "Do you find from the preponderance of the evidence that the plaintiffs shipped said 900 crates of onions for the defendants as a mere accommodation to the defendants?" This being affirmatively answered, the court rendered judgment in favor of appellees for the sum of $1,125, with 6 per cent. interest from June 2, 1920.

[1] The evidence justified the finding of the jury that the onions belonging to appellants were shipped with those belonging to appellees, under an arrangement made by appellees with Armengol of Laredo. The uncontradicted evidence showed that the money was paid to appellants under a misapprehension that it had been paid by Armengol to the Dilley State Bank, but which had not been done by Armengol. Appellants at first freely admitted that they were indebted to appellees for the sum of $1,125, paid to them through mistake, but afterwards refused to pay it.

[2] The petition of appellees was not open to a general demurrer. It states a cause of action. The allegations clearly show that appellees, as an act of kindness, and in the spirit of accommodation, gave appellants the benefit of the terms of a contract appellees had with Armengol, without making a cent by the transaction, that they owed appellants nothing, but that all the obligation was on the other side, and that under a mistake they had paid $1,125 of their money to appellants. These acts of kindness, as shown by allegation and proof have been requited not only by ingratitude, but by an utter failure and refusal to repay to appellees the money for which they received nothing. We overrule the first and second points of law of the four presented by appellants.

[3] If it be admitted that the allegations as to an effort at arbitration should have been stricken from the petition, such error could not have injured appellants, for the reason that the matter of attempted arbitration was not submitted to the jury, but the case was decided alone upon the issue as to whether the onions of appellants were shipped as a matter of accommodation to them. The allegations as to arbitration did not in any manner influence the judgment rendered in the cause, because it was not made an issue by the charge of the court.

[4] It may be contended that the refusal to sustain the exceptions was injurious in that the allegations were made the basis of testimony as to the attempted arbitration, and this involves a discussion of the fourth point presented by appellants. No bill of exceptions was reserved or attempted to be reserved to the parol evidence as to the arbitration offered, the bills being aimed at the letters on the subject which were introduced in evidence. However we find that not only Cory swore to a proposed arbitration on the part of appellants and without challenge or objection, but Nagy swore to the same thing without objection when being examined by appellees. Nagy swore: "I never did fix up that arbitration, but I did agree to arbitrate." Witherspoon also swore to it. The verbal testimony not being objected to, its admission destroyed the force and effect of objections to the written evidence, even though proper exceptions had been reserved. The parol evidence objected to as set out in the first bill of exceptions does not indicate that it was in regard to an arbitration, but may have been in regard to any other subject, although objected to on the ground that it was an effort at compromise. The real testimony as to an arbitration met with no objection.

When the first letter from Cory to Witherspoon and Nagy was offered, the only objection was: "We object to the letters. They state conclusions." This offered no reason for rejecting the letter. When the first letter from appellants to Cory was offered, appellants merely objected, no grounds being given. So in regard to the second letter written by Cory. The objection to the letters as shown by the fifth bill of exceptions was that there was no completed agreement. One of the letters was from Arnold and Cozby, attorneys for appellees, and merely stated that they had been employed to collect

the $1,125. The other was a reply in which appellants stated that they had agreed to arbitrate the matter which "is always more satisfactory than getting into the courts and letting the lawyers get everything there is in it." The objection was not sufficiently clear, but, if it had been, the admission of the letter did not add anything to other testimony on the same subject, received without any reasonable objection.

The only objection urged to a letter to appellants by Arnold and Cozby, writing fully about the arbitration was: "The court understands we are objecting to all this testimony." Of course that was no objection at all. The arbitration contract signed by Cory, but which appellants failed or refused to sign, was introduced in evidence, and the objection to it was that it had reference "to an uncompleted arbitration."

[5] It is in effect admitted that several of the exceptions were not properly reserved, but appellants seem to think that their imperfections were cured by the fact "that it was thoroughly understood by the court and by counsel for appellees that defendants were objecting to all the evidence bearing on the arbitration agreement, for the reasons shown in bill of exceptions No. 8." Every bill of exceptions must be perfect in itself, and can gain no assistance from reasons set forth in another, even though they were clear and to the point. They were not such bills of exceptions as are provided for in the rules and statutes.

If proper bills of exception had been taken and the letters and contract were improperly admitted in evidence, it could not profit appellants. By the call of honor, as well as by the demands of law, they are indebted to appellees in the sum paid to them, and they at first recognized the obligation and in effect promised to repay the money. A change came however, but whatever influence operated to make them change their minds and caused them to repudiate their obligation, they did it, and have forced appellees into the courts and have compelled appellants to come into contact with judicial tribunals and the legal profession, which at one time they expressed a desire to avoid.

The judgment is affirmed.